UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALISHA HALL,

          Plaintiff,

          v.                                       Case No. 19-CV-1780

ANDREW M. SAUL,
Commissioner of the Social Security Administration,

          Defendant.

## DECISION AND ORDER

**1. Introduction**

Plaintiff Alisha Hall alleges that she has been disabled since October 29, 2014. (Tr. 274.) She seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 145-64) and upon reconsideration (Tr. 167-86), a hearing was held before an administrative law judge (ALJ) on August 15, 2018 (Tr. 42-88). On November 15, 2018, the ALJ issued a written decision concluding that Hall was not disabled. (Tr. 18-41.) After the Appeals Council denied Hall's request for review on September 30, 2019 (Tr. 1-6), Hall filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 8), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since October 29, 2014, the alleged onset date." (Tr. 24.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Hall has the following severe impairments: "cervical and lumbar spine impairments; obesity; hip bursitis; depression; social anxiety; post-traumatic stress disorder (PTSD); and a substance abuse disorder in remission." (Tr. 24.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20

C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, including those under 1.00 and 12.00 …." (Tr. 24.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Hall has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot work at unprotected heights or around dangerous moving machinery. The claimant requires work that can be done either sitting or standing. The claimant cannot climb ladders, ropes or scaffolds. The claimant can occasionally stoop or crouch. The claimant must avoid concentrated exposure to extreme heat, extreme cold, humidity, and vibration. The claimant can perform work that does not impose fast-paced production quotas. The claimant is frequently, but not constantly, able to handle and finger with the bilateral upper extremities. The claimant is able to understand, remember, and carry out simple instructions, and can make simple, work-related decisions. The claimant can tolerate occasional changes in the work setting. The claimant can frequently interact with supervisors and co-workers, and can occasionally interact with the public.

(Tr. 27.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 33.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 34.) Specifically, the ALJ identified jobs as an electronics worker, DOT Code 726.687-010, inspector/hand packager, DOT Code 559.687-074, and small parts assembler, DOT Code 706.684-022. (Tr. 34-35.) Therefore, the ALJ found that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from October 29, 2014, through the date of this decision." (Tr. 35.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   **4.1. Fibromyalgia**

   Hall argues that the ALJ erred by not finding her fibromyalgia a medically determinable impairment. (ECF No. 12 at 18-21.) She contends:

   > Though the ALJ claims to have considered the fibromyalgia evidence, it can be safely assumed that in finding fibromyalgia was not a medically determinable impairment, the ALJ gave less weight to the affect it has on Ms. Hall's overall ability to function; which foreseeably factored into the ALJ's finding that Ms. Hall's subjective testimony was not consistent with the record as a whole. If there is a gap that exists between the objective evidence and Ms. Hall's testimony, as the ALJ claimed; that gap can rationally be explained and filled by acknowledging the extreme pain Ms. Hall experiences as a result of her severe fibromyalgia. Without such acknowledgement, that gap remains. Further, when the ALJ explained how

> each of Ms. Hall's impairments and symptoms were incorporated into the RFC, fibromyalgia was not included; it follows that although the evidence was allegedly considered, her fibromyalgia was not accounted for in the RFC.

(ECF No. 12 at 20-21 (internal citations omitted).)

The Commissioner responds that the ALJ appropriately concluded that statements of Hall's treating physician on a "Fibromyalgia Impairment Questionnaire" were insufficient to establish that Hall suffered from fibromyalgia because the physician did not indicate the location of the 15 tender points he identified. (ECF No. 15 at 5.) SSR 12-2p requires not merely 11 tender points but at least 11 tender points bilaterally and above the waist. (ECF No. 15 at 5.) Thus, the ALJ reasonably concluded that the SSR 12-2p criteria were not satisfied. (ECF No. 15 at 5.) In any event, the Commissioner continues, any error would have been harmless because the ALJ stated that she considered all evidence regarding fibromyalgia in assessing Hall's RFC. (ECF No. 15 at 5.)

For present purposes the court presumes that the ALJ erred by not finding Hall's fibromyalgia a severe impairment. Both state agency medical consultants concluded that Hall's fibromyalgia was a severe impairment, and thus necessarily found that it was a medically determinable impairment. (Tr. 32.) The apparent basis for the ALJ's conclusion that fibromyalgia was not a medically determinable impairment was that Hall's treating physician "did not rule out the possibility that the claimant's pain is caused by other conditions." (Tr. 24.) If other conditions had not been excluded as a basis for a claimant's

6

Case 2:19-cv-01780-WED   Filed 12/03/20   Page 6 of 13   Document 17

symptoms, fibromyalgia could not be found to be a medically determinable impairment. *See* SSR 12-2p sec. II. A. 3 and B. 3.

The ALJ's statement is unsupported by any citation to the record, but it comes in the context of her discussion of the physician's Fibromyalgia Impairment Questionnaire. (Tr. 517-20.) But nowhere on the form is the physician asked whether Hall's symptoms might be attributable to some other condition. (Tr. 517-20.) Nor did the physician state that another condition might be responsible for Hall's symptoms. (Tr. 517-20.) Thus, the absence of a statement on the form that other conditions have been excluded is hardly probative of whether there is "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p.

The Commissioner also argues that the physician's failure to note the location of the tender points he identified precluded a finding that the requisite 11 tender points were found bilaterally and both above and below the waist, as required under SSR 12-2p. (ECF No. 15 at 5.) But, as Hall notes, her treating physician stated that he found 15 out of 18 tender points. Therefore, the physician necessarily would have found the requisite tender points were bilateral and both above and below the waist; there is no way a combination of 15 tender points would be anything other than on both sides of a patient's body and both above and below the waist. (ECF No. 16 at 2); *see also* SSR 12-2p.

Having said all of that, the Commissioner has demonstrated that any error was harmless. The ALJ expressly stated, "Nonetheless, the undersigned has considered all of the evidence concerning the presence of fibromyalgia symptoms and treatment in the record." (Tr. 24.) Hall offers only speculation that maybe she didn't *really* consider her fibromyalgia symptoms. (*See* ECF No. 12 at 20 ("it can be safely assumed that in finding fibromyalgia was not a medically determinable impairment, the ALJ gave less weight to the affect it has on Ms. Hall's overall ability to function; which foreseeably factored into the ALJ's finding that Ms. Hall's subjective testimony was not consistent with the record as a whole").)

In some cases, because only symptoms associated with medically determinable impairments should be considered in assessing RFC, finding that an alleged impairment is not a medically determinable impairment may lead an ALJ to disregard certain symptoms. *See* SSR 16-3p. But fibromyalgia is evidenced by vague symptoms. Thus, there is a need to exclude other causes for a patient's symptoms before making a diagnosis of fibromyalgia. Hall had many other medically determinable impairments, and the ALJ found that they could produce the symptoms that Hall attributed to fibromyalgia. (Tr. 28 ("the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").)

Thus, there was no dispute that Hall suffered the symptoms she attributed to fibromyalgia. Whether her symptoms were the result of fibromyalgia or some other

condition was beside the point; what mattered was that the ALJ considered those symptoms in assessing Hall's RFC. Hall does not point to any specific finding that demonstrates that the ALJ failed to actually consider her fibromyalgia symptoms.

Given that the ALJ considered how the symptoms that Hall attributed to fibromyalgia affected her ability to work, the court can predict with great confidence that the ALJ would reach the same result if it remanded on the basis that the ALJ erred by not finding fibromyalgia as a medically determinable impairment. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). It "would be a waste of time and resources for both the Commissioner and the claimant" to order remand so the ALJ could redo what she expressly stated she already did. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

### 4.2. Hall's Subjective Complaints

Hall argues that "[t]he ALJ offered improper, and insufficient reasoning for discounting Ms. Hall's subjective testimony and complaints. As such, the case should be reversed." (ECF No. 12 at 21.) She states that, "[w]hile it is clear the ALJ followed Social Security Ruling 16-3p and offered reasoning for limiting the weight of Ms. Hall's subjective complaints, this reasoning was flawed." (ECF No. 12 at 22.)

The ALJ stated:

The claimant alleges that due to multiple impairments and limitations, her ability is limited in performing such functional activities as lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering completing tasks, concentrating, understanding, following instructions, and getting along with other people (Ex.5E). Nonetheless, the claimant retains the ability to concentrate, persist, or

9

> maintain pace sufficiently to perform activities of daily living such as personal care, paying bills, taking public transportation, and using the Internet (Ex.5E). Furthermore, the claimant takes care of her autistic child. All of these activities demonstrate that the claimant retains significant functional capacity (Ex.5E; Hearing Testimony).

(Tr. 28.) The ALJ also noted, in part, that Hall was taking only ibuprofen for her back pain (despite having been prescribed tramadol), she reported radiculopathy but contemporarily had overall good range of motion, she made steady improvement with physical therapy, and she said she needed a cane to walk but during an exam was able to walk without any problems while wearing flipflops. (Tr. 28-29.)

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities …." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's

symptoms." SSR 16-3p. The ALJ must consider the following factors in addition to the objective medical evidence:

> (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness and side effects of medication; (5) any treatment, other than medication, for relief of pain or other symptoms; (6) any measures the claimant uses to relieve the pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

Hall first argues that the ALJ erred in considering her activities of daily living by not considering evidence that she engages in certain activities only with difficulty. (ECF No. 12 at 22.) Although Hall points to evidence that she was limited in her activities of daily living (ECF No. 12 at 22), that does not mean the ALJ's findings were not supported by substantial evidence. Faced with evidence that cuts both ways, the fact that the ALJ chose one side does not suggest error. *Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at *5-6 (E.D. Wis. Oct. 3, 2019). "Two contrary conclusions may each be supported by substantial evidence." *Id*.

Second, Hall asserts that, although she cares for her special needs daughter, she does so only with great difficulty and because she has no other option. (ECF No. 12 at 23.) The court agrees that Hall's care for her daughter is not especially relevant in assessing the severity of her symptoms. "[S]heer necessity may compel one to perform tasks at home no matter how painful, such as taking care of one's child." *Forsythe v. Colvin*, 813

11

F.3d 677, 679 (7th Cir. 2016). But remand is not required merely because one of the many reasons the ALJ offered was of borderline relevance.

> Finally, Hall argues that
>
> > the ALJ's finding that Ms. Hall's reports of severity of her medical condition are not consistent with the overall record is suspect due to the improper finding that Ms. Hall's fibromyalgia is not a severe medically determinable impairment. Although Ms. Hall may testify to symptoms that seem greater than the objective evidence may suggest, her testimony is consistent with her longstanding struggle with fibromyalgia.

(ECF No. 12 at 23.)

Notwithstanding SSR 16-3p's limitation to medically determinable impairments, as noted above, the ALJ expressly stated that she considered *all* of Hall's symptoms, including those she attributed to fibromyalgia, in assessing whether Hall was disabled. Whether Hall's symptoms were attributable to fibromyalgia or some other condition was ultimately inconsequential because the ALJ assessed those symptoms all the same. Hall has not identified any instance where the ALJ's conclusion regarding fibromyalgia could be said to have impacted a specific symptom finding. Thus, there is no reason to suspect that the ALJ's conclusion as to the severity of Hall's symptoms would have been any different had the ALJ concluded that fibromyalgia was an additional medically determinable impairment.

Overall, the ALJ's decision "contain[s] specific reasons for the weight given to the individual's symptoms," is "consistent with and supported by the evidence," and is "clearly articulated" so the court "can assess how the adjudicator evaluated the

individual's symptoms." SSR 16-3p. The fact that a different adjudicator might have reached a different conclusion is not a reason for the court to upset the ALJ's decision.

## 5. Conclusion

The court presumes that the ALJ erred by failing to find that Hall's fibromyalgia was a medically determinable impairment. But because the ALJ nonetheless considered the symptoms associated with her alleged fibromyalgia, any error was harmless. The ALJ's assessment of Hall's symptoms was consistent with SSR 16-3p, and her conclusions were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 3rd day of December, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge